Moncure, P.,
delivered the opinion of the court.
This is a supersedeas to a judgment of the Circuit court of Scott county, affirming a judgment of the County court of said county, convicting the plaintiff in error, Alexander Murphy, of felony, in feloniously and maliciously striking and wounding his father, John Murphy, with intent to maim, disfigure, disable, and kill the said John Murphy. The errors complained of appear in the several bills of exception, which were taken to opinions of the County court given during the progress of the trial. "We will notice them in the order in which the said bills of exception were taken and are numbered in the record. And,—
First: ¥e are of opinion that the county court did not err in overruling the motion of the plaintiff in error to withdraw his plea of not guilty, and file the special plea set out in the first bill of exceptions. Even if the special plea had been offered in time it presented no, bar to the prosecution, and was properly rejected on that ground. It avers that the plaintiff in error had been charged before a justice of the peace of said county, with having committed an assault upon the said John Murphy; that the said justice had jurisdiction of the case, and after healing all the evidence, found the accused guilty of the assault charged, and adjudged him to pay the sum of ten dollars as a penalty therefor and costs; that the said judgment was final, unrevoked and in full force; that the assault and battery so charged, and of which he was so convicted before said justice, is the same identical offence set forth in said indictment; and that the record of said proceeding had been lost, so that *963 the same could not be produced; but that he was ready to make proof of the same by said justice and others.
This proceeding before a justice of the peace, must have been under the act approved March 30, 1871, entitled “an act to extend the jurisdiction of police justices and justices of the peace in certain cases;” acts of assembly, 1870-71, p. 362. But that act, while it gives to justices of the peace “concurrent jurisdiction with the county and corporation courts of the State, of all eases of assault and battery, not felonious, occurring within their jurisdiction,” gives them no jurisdiction whatever of such cases of assault and battery as are felonious. And as the assault and battery charged in the indictment in this case, and of which the accused was convicted by the verdict and judgment, was felonious, therefore a justice of the peace had no jurisdiction of the case; and any judgment which may have been rendered by a justice as alleged in said plea is null and void, and was no bar to the prosecution for the felony.
But even if the accused had been indicted and convicted of a mere assault and battery, in the County court having jurisdiction of such an offence generally, the conviction would not have been a bar to an indictment for a felony in the perpetration of which the assault and battery was committed. The misdemeanor in such case is considered as merged in the felony. “ "Where the prisoner has been convicted of a misdemeanor, and is afterwards indicted for a felony, the two offences have been considered so essentially distinct, that a conviction of one was deemed no legal bar to an indictment of the other. In the Commonwealth v. Roby, 12 Pick. R. 496, the misdemeanor was an assault charged to have been committed with intent to murder. After conviction of this offence, the party assaulted died, and then the prisoner was indicted' of murder; He pleaded auterfois *964 conviei, to which there was a demurrer; and after full1 argument and great consideration, the judges came unanimously to the conclusion, that the facts constituting the murder would not have been competent evidence to warrant a conviction of the assault, and judgment was entered that the plea was not good, and that the prisoner should answer over to the indictment.” 3 Rob. Pr. old ed. 181.
_ Secondly: W& are of opinion that the County court did not err in excluding certain evidence from the jury, as mentioned in the 2d bill of exception. It is stated in that bill, “ that upon the trial of this case, the commonwealth introduced John Murphy as a witness; and upon his examination, he was asked by the defendant if he did not state to his wife, Haney Murphy, at his own house, a short time after he was struck by the defendant, that the defendant acted only in his own defence ; to which he replied, that he did not make any such statement. The defendant further asked the said witness, Murphy, if he was not living atithe time in a state of adultery, and that the difficulty arose by his espousing the cause of the said Mary Elliott; to which he replied that he never had any sexual intercourse with the 3aid Elliott. The said Haney Murphy was then called by the defendant, and stated that at the time of the said difficulty, said John Murphy and Mary Elliott, were living together as man and wife; that he had driven the witness, his wife, off', some six or seven years since, and also his children, and they still live apart; and further, that he stated to her at his own house, a short time after the difficulty, that .he would rather be killed than that Mary Elliott should be hurt; and that at the time Alexander Murphy, the defendant, struck him, he was acting only in his own defence; all of which, upon the motion of the common *965 wealth was excluded from the jury;” to which the defendant excepted.
The evidence thus excluded consisted of answers of the witness, John Murphy, to two questions put to him by the defendant on cross examination; and a statement made by the witness, Haney Murphy, on her examination in chief by the defendant. The court did not err in excluding the 1st question propounded to the witness, John Murphy, and his answer thereto; 1st, because the question tended to criminate the witness; and 2d, because it required him to state a communication supposed to have been made by him to his wife; which, if made ,was what the law considers a confidential communication, and which he was not bound to disclose. Hor did the court err in excluding the 2d question propounded to the said John Murphy, and his answer thereto; 1st, because the question tended to criminate the witness; 2d, because the facts sought to be proved by the answer to this question was wholly irrelevant and inadmissible evidence in the case; and 3d, because the answer of the witness to the question, “that he never had any sexual intercourse with the said Elliott,” denied the guilt imputed to him by the question; which being a collateral matter not connected with the subject of the prosecution, his answer to the question was conclusive, and could not be contradicted by any testimony on behalf of the defendant. In regard to the statement made by the witness, Haney Murphy, wife of the said John Murphy, the court did not err in excluding it, if not because the whole of it tended to criminate her husband, at least, because that part of it which related to John Murphy and Mary Elliott’s living together as man and wife, and to his having driven off his wife and children, and living apart from them, was irrelevant and Inadmissible evidence in the case, and because the resi *966 due of it disclosed communications supposed to have-been made by the husband to the wife, is what the law considers confidential; and which, therefore, she had not a right to disclose.
To show that the evidence of the wife was admissible-in this case. X Phil, on Ev. top page 68, marg. 84,. was referred to, and relied on by the counsel for the plaintiff in error. It is there said, that “although the husband and wife are not allowed to be witnesses against each other, where either is directly or immediately interested in the event of a proceeding, whether civil or criminal, yet in collateral proceedings, not immediately affecting their mutual interest, their evidence is-receivable, notwithstanding that the evidence of the one tends to contradict the other, or may subject the other to a legal demand, or even to a criminal charge.” “The rule laid down in the case of the King v. The Inhabitants of Cliviger.” (2 T. R. 263,) it is further said by that writer, (namely: that a husband or wife ought not to be permitted to give any evidence that may even tend to criminate each other,) “is now considered as having been laid down in terms much too general and undefined.” He then refers to the cases of The King v. The Inhabitants of All Saints, Worcester. (6 Maul. & Sel. 194;) and The King v. The Inhabitants of Bathwich. 6 Barn, and Ad. R. 639, in which he says the rule was-much discussed, and the Court of Kings Bench was of opinion, after much argument, that the rule laid down' in The King v. Cliviger, was too large and general. In a subsequent case, however, The King v. Gleed, (2 Russ. Cr. and M. 983, ed. by Greaves,; also mentioned by Phillips: “ Hpon an indictment for larceny, where a woman was called on the part of the crown, to prove that her husband who had absconded, had been present when the article was stolen, and that she saw him de *967 liver it to the prisoner; Taunton, J., after consulting with Littledale, J., rejected the witness. His Lordship says: “ The evidence of the wife here would directly charge the husband with being a principal; and although there is no prosecution pending, her evidence cannot but facilitate an accusation against her husband. How the law does not allow the wife to give evidence against her husband, and it is quite consistent with that principle, that this evidence should not be received.’ ” “ It may be doubted, however,” says Phillips, whether this ruling was correct. It would certainly appear not to be so 'upon the principles laid down in Hex Batluoich (which was cited in the case,) for if the husband were indicted for the theft, the wife could not be a witness on that trial, nor could any thing she had said on the former trial be in any way adduced in evidence against him.
Thus the law seems to stand in England, where the weight of authority now is, that in such a case as this the testimony of the wife would not be inadmissible on the ground of interest, and that it tended to criminate her husband; and the weight of authority in this country that is in the States of this Union, may be the same way. See 1 Greenl. on Ev. § 342 and notes. But in Stein v. Bowman, 13 Peters, R. 209, the case of The King v. Cliviger 2 T. R. 263, is mentioned without disapprobation by McLean, J., in delivering the opinion of the court; though he refers also to the subsequent case, reported in 6 Maul. & Sel. 194, and concludes that thp law does not seem to be entirely settled how far in a collateral case a wife may be examined on matters in which her husband may be eventually interested. The most that can be said on the subject seems to be, that the law upon the question is unsettled.
But we do not deem it necessary to decide the ques *968 tion in this case, as there is another ground upon which we think that so much of the evidence rejected as is rel-o evant to the case, is clearly inadmissible—we mean that portion of the evidence of Haney Murphy, which says *kat her husband “ stated to her at his own house, a short time after the difficulty, that he would rather be killed than that Mary Elliott should be hurt; and that at the time Alexander Murphy, the defendant, struck liim, he was acting only in his own defence.” The ground on which this evidence is inadmissible is thus stated in Greenleaf on Evidence, § 254. “ Communications between husband and wife belong also to the class of privileged communications; and are therefore .protected, independently of the ground of interest and identity, which precludes the parties from testifying for or against each other. The happiness of the married state requires that there should be the most unlimited confidence between husband and wife; and this confidence the law secures, by providing that it shall be kept for.ever inviolable; that nothing should be extracted from the bosom of the wife, which was confided there by the husband. Therefore, after the parties are separated, whether it be by divorce or by the death of the husband, the wife, is still precluded from disclosing any conversation with him; though she may be admitted to testify to facts which came to her knowledge by means equally accessible to any person not standing in that relation.” Several authorities are cited in the note to this section, but only two of them will be noticed here. In Stein v. Bowman, 18 Peters’ R. 209, it was held that a wife, after the death of her husband., cannot be allowed to prove that her husband had confessed to her that he had committed perjury in a deposition read in the cause. McLean, J., in delivering the opinion of the court, said: “ In the present ease the witness was called to dis *969 -credit her husband; to prove in fact that he had committed perjury, and the establishment of the fact depended on his own confession—confessions which, if ever made, were made under all the confidence that subsists between husband and wife. It is true the husband was dead, but this does not weaken the principle. Indeed it would seem rather to increase, than lessen, the force of the rule. Can the wife, under such circumstances, either voluntarily be permitted, or by force of authority be compelled, to state facts in evidence, which render infamous the character of her husband? We think, most clearly, that she cannot be. Public policy and established principles forbid it.” In Robin, &c., v King, 2 Leigh, 140: In a suit by persons held in slavery against their master, to recover their freedom, defendant claimed plaintiffs as slaves by purchase of them as slaves from W. K., dec’d ; and plaintiff's offered K. K., widow of W. K., to prove that W. K., in his life time, before sale to defendant, repeatedly declared, in presence of his family, and without inj unction of secrecy, that the mother of plaintiffs then held by him in slavery was an Indian woman. Held: Widow not competent witness to prove such declarations of her •deceased husband. This is the reporter’s abstract of the decision. Judge Carr, in his opinion, in which the other judges concurred, fully recognizes the principle of evidence which forbids the disclosure by a husband or wife of confidential communications received from the •other. After citing and commenting upon several •cases of the kind, he says : “ These are cases in which the husband was a party; but the principle applies also where he is no party; for in the one case or the other, it is equally a violation of the confidence reposed, to divulge, in a court of justice, what was imparted in the sacred privacy of domestic intercourse: and of this opinion, Starkie seems to be.” After quoting a passage *970 from that author’s work on evidence, part (IV. p. 709,) he further says: “ Now the case from Strange did not violate this rule; the wife disclosed no communication; hut being present when the goods were bought, she was called to prove on whose credit the sale was made. But is not our case very different? I think so. The husband was at the time holding in slavery the mother and her childeren; If she was an Indian woman they were all entitled to their freedom. Can we possibly suppose that he meant to make such a declaration public ? It is stated that the party offered to prove that these declarations were made repeatedly, in the presence of the family, and they were not requested to keep them secret. This could only, I presume, be proved by the wife; and I question the propriety of permitting her thus to qualify herself to disclose such communications. But suppose it proved, that the declarations were so made, and no secrecy enjoined ; would it follow that the husband wished or expected they should be divulged ? Are we to say that every word spoken in ttie thoughtless, careless confidence of the domestic circle, is free for public disclosure, unless secrecy be expressly enjoined? Is not the converse of the proposition true? And would it not have a most mischievous effect, would it not seriously break in upon that confidence which is the charm of domestic life, if men should from our decisions, have cause to fear that after they were in their graves, their reputation might be injured and their children ruined, by the declarations they had made in the bosoms of their families ? This freedom from restraint or apprehension, in the intercourse of one’s own fireside, seems to me so necessary to the quiet and repose ’of society, that I am fearful of trenching upon it in the slightest degree.”
According to the authorities referred +o, we think *971 there can be no doubt of the inadmissibility, as evidence in this case, of the statement said by the witness, Haney Murphy, to have been made to her by her husband, at his own house. That the husband and wife lived apart when the statement was made, does not take the case out of the operation of the principle. The parties were not legally separated. They still were man and wife, entitled to all their legal rights as such, however unworthily the husband may have acted. The rest of the evidence set out in the second bill of exceptions is inadmissible, as we have already seen, upon other grounds.
Thirdly: We are of opinion, that the said County court did not err in overruling the motion of the prisoner to set aside the verdict and grant him a new trial, as mentioned in his third and last bill of exceptions; and that all the reasons assigned in said bill for granting such new trial are insufficient for that purpose. They are five in number. The 1st: “Because he was arraigned and plead without the aid of counsel, having none present when he plead not guilty to the indictment,” is not well founded. A man may plead for himself. The prisoner said he had counsel, though they happened to be absent. He plead voluntarily, and had the cause continued; and his counsel were present and defended him at his trial. The 2d and 3d have already been disposed of, being the subjects of the 1st and 2d bills of exception. The 4th is, “because the court erred in giving to the jury the instructions asked for by the commonwealth. These instructions were not excepted to when they were given, nor till after the verdict; and it is at least doubtful, whether tjhey can be regarded as a part of the record. They are not copied in the 3d bill of exceptions, nor are they therein referred to, except by being mentioned as aforesaid, in the 3d of the reasons assigned for a *972 new trial. They are copied hy the clerk at the end of 'the record. Without deciding whether they can properly cons^ered as a part of the record, but assuming them ' to be so, for the purposes of this case, we are of opinion, oourt did not err in giving them. After giving ■two instructions on the motion of the prisoner, the court gave the following on the motion of the commonwealth :
“The court also instructs the jury, that the law is, that a man is taken to intend that which he does, or which is the natural and necessary consequence of his own act; and therefore, that if they believe from the evidence, that Alexander Murphy wounded his 'father, John Murphy, by the deliberate use of an instrument likely to produce death, under the circumstances; then the presumption of the law, arising in the absence of proof to the contrary, is, that he intended the consequences that resulted from said use of said deadly instrument.
“ The court further instructs the jury, that the law is that malice may be implied from the deliberate use of a deadly weapon in the absence of proof to the .contrary.” These two instructions correctly expound the law; and were appropriate, and not mere abstractions. The 5th and last of the reasons assigned are, that “ the judgment should be arrested, because there is no felony •charged in the 2d count of the indictment, which may be the. one under which the jury found him guilty.” They found him guilty under both; and if either be sufficient, it is enough. Whether a felony he charged in the 2d count or not, is a question which we need not decide; as the 1st is certainly a good count, and is conceded to be so by the plaintiff in error. hTo motion was made to set aside the verdict, upon the ground that it was contrary to law and evidence; and certainly it was contrary to neither.
*973 "We are of opinion, that there is no error in the judgment, and that it ought to be affirmed.
JUDGMENT ARRIRMED.